IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **WILLIAM B. GREGORY, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:12CV00042 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **THE UNITED STATES DEPARTMENT** ) | By:  James P. Jones |
| **OF TREASURY – INTERNAL** ) | United States District Judge |
| **REVENUE SERVICE,** ) | |
| ) | |
| Defendant. ) | |

*William D. Bayliss and Joseph E. Blackburn, III, Williams Mullen, P.C., Richmond, Virginia, for Plaintiffs; Katherine M. Walker, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.*

In this action under the Internal Revenue Code, the plaintiffs ask the court to apply the doctrine of equitable subrogation as established under Virginia law to determine the value of a federal tax lien attached to their property.  Because I find that the plaintiffs have not alleged facts that will plausibly entitle them to relief, I will grant the United States' Motion for Judgment on the Pleadings.

I

The plaintiffs, William B. Gregory and Bettina L. Gregory, husband and wife, owned real estate ("the property") in Bristol, Virginia, encumbered by a federal tax lien ("the tax lien") resulting from a tax assessment against a former

owner of the property.  While notice of the tax lien had been duly filed in the local land records, the Gregorys claim that they did not actually learn of the tax lien until after they had purchased the property, mortgaged it, and improved it.  They have brought this action pursuant to I.R.C. § 7426(b)(4) (West 2011), challenging the determination by the Secretary of the Treasury of the dollar value of the interest of the United States in the property by virtue of the tax lien.  The United States[1] has filed a Motion for Judgment on the Pleadings, which has been fully briefed and orally argued and is ripe for decision.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards applicable to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Edwards v. City of Goldsboro*, 178 F. 3d 231, 243 (4th Cir. 1999).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007),

---

[1] The plaintiffs have named as defendant, "The United States Department of Treasury – Internal Revenue Service."  The proper defendant is the United States.

and must view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

The facts as alleged by the plaintiffs in their Complaint can be summarized in pertinent part as follows.

In 1981, Joe and Betty Watson, a married couple, purchased the property and took title as tenants by the entirety. In 1994, the Watsons received a loan from Highlands Union Bank, secured by a deed of trust on the property. In 2002, the IRS filed a proper notice of federal tax lien in the amount of $199,764.59 against Joe Watson, attaching to his one-half undivided interest in the property.[2] In 2003, the Watsons deeded the property to their daughter-in-law, Tammy Watson, who assumed the mortgage with Highlands Union Bank.

In 2006, Tammy Watson sold the property to the plaintiffs for $225,000. As part of the sale, there was paid to Highlands Union Bank the sum of $105,348.12 in satisfaction of the outstanding mortgage. The Gregorys financed the purchase using their own resources, as well as a mortgage loan from TriSummit Bank in the amount of $92,192.

---

[2] Federal law provides that a federal tax lien can apply to an individual spouse's one-half interest in property held as tenants by the entirety, so long as the law of the state in which the property is located would treat the individual spouse's interest as a property interest. *See United States v. Craft*, 535 U.S. 274, 283 (2002). It is undisputed that Virginia, the state in which the property is located, so treats a spouse's ownership as a tenant by the entirety. *See United States v. Parr*, No. 3:10-CV-00061, 2011 WL 4737066, at *3 (W.D. Va. Oct. 6, 2011).

Following their purchase, the Gregorys invested "in excess of $100,000" in renovations to the property. (Compl. ¶ 11.) Thereafter, the Gregorys entered into a contract to sell the property for $380,000. In the process of completing the sale, however, the tax lien was finally discovered, but the IRS refused to discharge it for less than $190,000, representing one-half of the sales price of the property.

In order to file this action, the Gregorys furnished the IRS a surety bond in the amount of $190,000 and have obtained from the IRS a certificate of discharge of the property, pursuant to I.R.C. § 6325(b)(4)(A)(ii) (West 2011).[3] Since the property is no longer subject to the lien, the Gregorys seek an order relieving them of liability on the bond.

II

The Gregorys do not dispute that the <u>present</u> fair market value of the property is $380,000, or that one-half of that amount is $190,000, which is the amount claimed by the United States as the value of its tax lien. Instead, they claim that they are entitled, under the doctrine of equitable subrogation, to "credit" (Compl. ¶ 15), for the payoff amount of the existing Highlands Union Bank mortgage when they bought the property, the amount of the TriSummit Bank

---

[3] The Gregorys earlier filed an action similar to the present one, but because they had not at that time obtained a certificate of discharge from the IRS, I dismissed the case for lack of subject-matter jurisdiction. *Gregory v. U.S. Dep't of Treasury – IRS*, No. 1:12CV00016, 2012 WL 3105203 (W.D. Va. June 26, 2012).

mortgage they obtained to buy the property, and the cost of the renovations they made on the property after they bought it.

In essence, the Gregorys' argument is as follows. They contend that the IRS should be put back in the position it was in at the time that the Gregorys bought the property in 2006. Had the tax lien been discovered then and the Gregorys had gone ahead and purchased the property, the tax lien would have been paid, but the IRS would have received much less than the $190,000 now claimed. The IRS would have received only about $60,000, representing one-half of the purchase price then, less the amount of the senior lien to Highlands Union Bank. The Gregorys agree that the IRS is normally entitled to any "natural" increase over time in the value of property on which it has a lien, but here, they claim, they can show that the increase in the value of the property in question was solely due to their improvements. Thus, they assert, the IRS will not be prejudiced if the court grants them relief. Absent any such prejudice, they argue that the court should apply its equitable powers and correct their failure to discover the tax lien.

A

The Internal Revenue Code provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." I.R.C. § 6323(i)(2) (West 2011). In Virginia, such

subrogation is "the substitution of another person in the place of the creditor to whose rights he succeeds in relation to the debt." *Fed. Land Bank of Balt. v. Joynes*, 18 S.E.2d 917, 920 (Va. 1942). "[T]he doctrine ensures that a creditor obtains a first-priority lien on its debtor's property when it issues a loan based on a good faith belief that it will have such a lien." *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x 527, 528 (4th Cir. 2010) (unpublished). When a "lender of money lent it with the intention and understanding that he be substituted to the position of the creditor," a court will treat the lender as if he had been assigned the loan, provided "there are no intervening equities to be prejudiced." *Fed. Land Bank of Balt.*, 18 S.E.2d at 920. Subrogation is a "creature of equity" and is "dependent upon the facts and circumstances of each particular case." *Id.*

The facts of this case are far different from the situations in which this equitable doctrine has been applied. The Highlands Union Bank mortgage was not paid in order that the Gregorys be substituted as lien creditors; it was paid as a condition of the sale in order to relieve the seller of the obligation and to clear the title to the property. Similarly, it is not TriSummit Bank that is seeking subrogation in this case; it has been paid out of the proceeds of the Gregorys' sale of the property.[4]

---

[4] While it is not entirely clear from the Complaint, at oral argument counsel confirmed that once the Gregorys substituted the surety bond and obtained a certificate of discharge, the sale of the property closed.

Most importantly, however, "subrogation is not appropriate where intervening equities are prejudiced." *Centreville Car Care, Inc. v. N. Am. Mortg. Co.*, 559 S.E.2d 870, 872 (Va. 2002). In this case, it is clear that the IRS would be prejudiced by reinstating the prior senior lien, as shown by the *Centreville Car Care* case.

In that case, real estate had been purchased on the basis of a loan from Creditor A, secured by a deed of trust. Shortly thereafter, the owner took another loan, this time from Creditor B, secured by a second deed of trust. Several years later the property was sold to new owners who were aware of the first lien, but not the second, on account of a negligent title search. To purchase the property, the new owners obtain a mortgage from Creditor C, also unaware of the second lien, which was used to pay off Creditor A. The remaining amount of the sales price was paid to the seller. When Creditor B attempted to foreclose on its lien, Creditor C filed an action seeking subrogation to the position of Creditor A's lien, ahead of Creditor B.

In denying Creditor C's claim, the Supreme Court of Virginia first stated that, although Creditor B was under-secured when it took its lien, it had the right to anticipate that the obligors would satisfy prior loans and that more senior liens on the property would be extinguished. Creditor B, therefore, would be prejudiced if a senior lien were to be extinguished but its lien not advanced in priority. *Id.* at

873. Similarly, in this case, when the IRS filed its notice of federal tax lien, it was second in priority to the existing mortgage, but had the right to expect to advance in priority as the more senior lien was extinguished. The fact that the IRS could not have sought total satisfaction of the lien at the time it was filed does not mean it would not be prejudiced by the insertion of another lien ahead of it in priority.

In addition, in *Centreville Car Care* the court noted that Creditor B was prejudiced when the balance of funds that remained after paying the original mortgage was distributed to the owner of the property rather than to it in satisfaction of its lien. *Id.* By this reasoning, the IRS was prejudiced when the balance of the purchasing funds that remained after paying the first mortgage was paid to Tammy Watson rather than to the IRS.

The *Centreville Car Care* court noted that to grant relief in that case would provide no incentive for purchasers and lenders to recognize and satisfy junior liens. Similarly, in the present case, granting relief would allow a simple claim of mistake, where there were no other equitable considerations, to endanger the position of junior lienors.[5]

---

[5] In *Centreville Car Care*, the Virginia court also considered the negligence of the creditor seeking subrogation in failing to discover the existence of the other lien. 559 S.E.2d at 873-74. In the present case, it was conceded by plaintiffs' counsel at oral argument that the negligent failure of the Gregorys' title examiner to discover the tax lien in the chain of title resulted in the present dispute. In any event, negligence is normally a factual matter for trial and it is not necessary for me to rely on that issue in granting the

B

The plaintiffs also request credit for their cost of improvements to the property during their ownership. This claim is similarly without merit.

The Supreme Court has observed that, "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien that no matter into whose hands the property goes, it passes cum onere.'" *United States v. Bess*, 357 U.S. 51, 57 (1958) (quoting *Burton v. Smith*, 38 U.S. 464, 483 (1893)). The Third Circuit interpreted this language in *United States v. Avila,* 88 F.3d 229, 233 (3d Cir. 1996), to hold that the amount the government could recover on a federal tax lien was not fixed at the value of the lien at the time the delinquent taxpayer transferred the property. The court observed that "[f]ixing the value of the lien at the time the taxpayer transfers the property certainly 'affects the lien,' and therefore *Bess* prohibits it." *Id.*

The Ninth Circuit reached a similar conclusion in *Han v. United States*, 944 F.2d 526 (9th Cir. 1991). The court held that "[b]ecause the lien is unaffected by sale, we see no basis for fixing the amount of the lien at the time of sale," *id.* at 528-529, and that "the fact that the IRS may recoup more than it would have if it had foreclosed while [the taxpayer] still held the property does not affect our analysis," *id.* at 529. *See also United States v. Librizzi,* 108 F.3d 136, 138-139 (7th

---

United States' Motion for Judgment on the Pleadings. *See Deutsche Bank Nat'l Trust Co.*, 361 F. App'x at 531 n1.

Cir. 1997) (holding that the value of a federal tax lien was not fixed at the dollar value of the taxpayer's interest in the property at the time of his death); *United States v. Doyle*, 276 F. Supp. 2d 415, 433 (W.D. Pa. 2003) (holding that allowing a debtor rather than a creditor to benefit from appreciation in the value of an encumbered property would be inequitable).

Even if the Gregorys' investment in improvements were treated as a lien on their own property, it would still be junior in priority to the federal tax lien and therefore would not be entitled to payment before the tax debt. *See United States v. Scheve*, No. CIV.A. CCB-97-3556, 1998 WL 919873, at *5 (D. Md. Nov. 20, 1998) (stating that "the federal tax lien has priority over the Scheves' potential lien for the value of renovations"); *Glass v. Sec'y, Dep't. of Treasury IRS,* 703 F. Supp. 38 (W.D. Ky. 1988) (rejecting the plaintiff's claims for recovery of improvement and maintenance expenses ahead of the tax lien).

### III

For the reasons stated, I find that the plaintiffs' are not entitled to the relief they seek. They have pleaded no plausible claim that would cause the court to reduce the value of the tax lien. Accordingly, it is **ORDERED** as follows:

1. The United States' Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED;

2. The court determines that the value of the United States' interest in the property subject to its tax lien as described herein is $190,000 and the United States may retain the bond given by the plaintiffs in satisfaction of such tax lien[6];

3. A separate judgment in favor of the United States shall be entered forthwith; and

4. The clerk shall close this case.

ENTER: November 7, 2012

/s/ James P. Jones
United States District Judge

---

[6] The United States requested this relief in its Answer filed herein. (United States' Answer 4.)